UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MICHAEL TYBERG,

                    Plaintiff,

          -against-                                    Case No.: 07 CV 2262

ALBERT EINSTEIN COLLEGE OF MEDICINE OF
YESHIVA UNIVERSITY, ALBERT EINSTEIN
COLLEGE OF MEDICINE OF YESHIVA UNIVERSITY
COMMITTEE ON STUDENT PROMOTIONS AND
PROFESSIONAL STANDARDS, JAMES DAVID, M.D.,
and ALLEN M. SPIEGEL, M.D.,

                    Defendants.
------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Michael Tyberg ("Plaintiff"), a former medical student at Albert Einstein College of

Medicine ("AECOM"), a constituent school of Yeshiva University, was dismissed from the

school after failing ten exams, a number that mandates student dismissal under the applicable

By-Laws of the school. Plaintiff's Complaint alleges that such dismissal constitutes violations of

due process and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

(1990). He now claims that the school failed to accommodate his disability, but at no time prior

to his failure of the ten exams did Plaintiff ever request accommodation. The proceedings

leading up to Plaintiff's dismissal were conducted in full compliance with applicable procedure

and have been well documented, leaving no question as to the reasons for Plaintiff's dismissal.

In light of the absence of any triable issue of fact, Defendants now move for summary judgment,

pursuant to Rule 56(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P"), to dismiss the Complaint for failure to state a claim on which relief can be granted and as time-barred.

Plaintiff's first claim, alleging a violation of due process should be dismissed because AECOM, a private educational institution, is not a state actor and did not act "under the color of state law". Moreover, AECOM acted in full compliance with its By-Laws governing the enforcement of academic standards.

Plaintiff's claim under Title III of the ADA should be dismissed because AECOM was under no obligation to accommodate a disability of which it had no knowledge and for which Plaintiff made no request for accommodation at any time prior to his tenth exam failure. Given that Plaintiff only informed AECOM of his possible Attention-Deficit/Hyperactivity Disorder ("ADHD") diagnosis months after the last of his ten exam failures, the ADA affords him no claim.

Indeed, when Plaintiff finally did notify AECOM's Dean during his appeal from the dismissal decision of the Committee on Student Promotions and Professional Standards (the "Committee") of his diagnosis he did not request accommodation but, instead, demanded reconsideration of such dismissal under a more lenient standard. Neither the ADA nor the Committee By-Laws contemplate such retroactive relief.

Plaintiff has argued that because he had done so poorly academically AECOM should have known that he suffered from ADHD. However, Plaintiff went to great lengths to explain that his poor academic performance was caused by transient personal problems, which included among other things, getting married, adjusting to married life, tending to a sick relative, choosing not to enroll in commercial exam preparation courses, and simply underestimating the difficulty of medical school exams.

Given the unique responsibility owed to the public by medical schools to maintain high standards for student performance and to prepare capable physicians, Defendants acted rationally and fully within their rights when terminating Plaintiff following his repeated exam failure, and there are no facts which would prove otherwise. Although Defendants accommodate students' disabilities, including ADHD, in accordance with the ADA, they are not required to apply the relevant guidelines retroactively.

In addition to the demonstrable lack of merit of Plaintiff's purported "due process" and ADA claims, is the inescapable fact that his claims were commenced well beyond the applicable New York State four-moth statute of limitations. New York courts have uniformly applied the four-month statute of limitations set forth in the Civil Practice Law and Rules ("CPLR") § 217(1) to disputes involving determinations by private academic institutions concerning actions taken against students. In this case, that limitations period indisputably began to run from July 12, 2006, the day Plaintiff's appeal of his dismissal was denied by the Dean. Accordingly, Plaintiff's claims must be dismissed.

STATEMENT OF FACTS

The relevant facts are set forth in the exhibits accompanying affidavit of Nadine T. Katz, M.D., sworn to March 31, 2008 ("Katz Aff."), and affirmation of Daniel Riesel, dated April 1, 2008 ("Riesel Aff."). They are summarized here as follows.

A.    Plaintiff Failed Nine Exams During First Two Years At AECOM

Plaintiff Michael Tyberg matriculated as a first-year medical student at AECOM, beginning in August 2002, at which time he was enrolled in the courses that are assigned to all first-year medical students. (Katz Aff., Ex. B.) As an AECOM student, Plaintiff was subject to the academic standards articulated in the By-Laws that apply to all AECOM students. (Id., Ex.

A.)  During his first year, Plaintiff failed a total of seven exams, including a make-up exam, and failed his Molecular and Cellular Foundations of Medicine ("MCFM") course.  (Id., Ex. B.) After the repeated failures of his first year, and in order to allow Plaintiff to retake the failed MCFM course, his second year course-load was reduced in accordance with AECOM policy. (Id., Ex. C; Ex. A at § IV.E.10.)  Despite the less demanding schedule, Plaintiff failed another two exams during his second year—one of which represented his third failure of a MCFM exam. (Id., Ex. B.)  Following such failures, Plaintiff's schedule was further "decelerated" pursuant to his own requests to postpone enrollment in two courses until the following academic year.  (Id., Ex. D.)

B.     Committee Found Plaintiff's Nine Failures Were Grounds For Dismissal

In response to this poor academic performance, Plaintiff was requested to appear before the Committee on Student Promotions and Professional Standards (the "Committee") at its May 2004 meeting.  (Id., Ex. E.)  The Committee consists of no less than twelve voting members (at least nine faculty members and at least 3 students) and is responsible for monitoring the academic progress and professional development of students and enforcing the academic standards set forth in the By-Laws.[1]  (Id., Ex. A at §§ I, III.)  In light of a medical school's "implicit obligation to society to award this degree only when it is appropriate to do so", these

_____

[1] A minimum of eight voting members is required to effect a formal Committee recommendation. Students appearing before the Committee are encouraged to submit a written statement detailing the circumstances leading to their appearance before the Committee, which circumstances will be considered by the Committee.  Upon a final Committee recommendation, a student may appeal such recommendation at the next Committee meeting.   The By-Laws governing Committee procedures allow students appealing Committee recommendations to receive assistance from a faculty advisor and provide for statements by up to three advocates from the faculty, student body, or family of the appealing student.   Following appeal before the Committee, students are afforded the opportunity to make a written appeal to the Dean.  The Dean's acceptance of a Committee recommendation represents a final decision. (Katz Aff., Ex. A. at §§ III, IV.)

academic standards are necessarily high. (Id. at § IV.C.)  Specifically, the By-Laws provide for

dismissal after seven exam failures and require dismissal after eight failures:

> The sixth failed exam triggers a 'probationary status,' and provokes appearing
> before the Committee.  Seven exams is grounds for dismissal.  Eight failed exams
> requires the student be dismissed.  Failing any exam or course twice warrants
> dismissal.  Committee members are encouraged to consider exam scores as
> reliable indicators of knowledge – rather than accepting the common argument
> that some students are poor test-takers yet nonetheless have a strong knowledge
> base.  The count for exams is cumulative throughout the medical school program,
> and includes the NBME examinations.

(Id. at § IV.D.14.) (Emphasis added.)

At its May 17, 2004 meeting, the Committee reviewed Plaintiff's academic record, which

documented Plaintiff's failure of nine exams, an unacceptable number of failures under the

above-referenced By-Laws. (Katz Aff., Ex. E; Ex. B.)  At that meeting, Plaintiff addressed the

Committee, detailing a number of extenuating circumstances as excuses for his poor academic

performance.  (Id., Ex. F.)  Plaintiff blamed "circumstances beyond [his] control" and "family

responsibilities" for his string of failures, specifically, his residence in Brooklyn and resulting

commute to the medical school campus, his commitment to care for a sick relative, and the stress

caused by his engagement and eventual marriage:

> These past two years have had more change in them than I have gone through in
> my entire life.  My grades represent a failed attempt to juggle these changes and
> medical school, to somehow do it all … The events culminating in my appearing
> before you today have humbled me to admit to you and to myself that I cannot do
> it all.

(Id.)  Plaintiff's statement included no indication that his academic difficulties were attributable

to a disability or that he ever made a request for accommodation for a disability.  (Id.)

Despite such recitation, and by a vote of 8-3, the Committee concluded that Plaintiff's

numerous exam failures—including failure of the same exam three times and continued failures

over an extended period of time and despite a decelerated schedule—were incompatible with the

responsibility of a medical school to maintain high academic standards. (Katz Aff., Ex. E.) As

documented in the meeting minutes "[t]he Committee, sympathetic up to a point, took a position

of not accepting this extended pattern of exam failures. Several Committee members voiced the

principle that personal responsibilities (to family, to spouse), would be increasing in the coming

years—not decreasing.   And that we all face the challenge of meeting our professional

obligations despite our personal travails." (Id.) The Committee concluded that Plaintiff should

be withdrawn from the medical school program. (Id.)

C.     Committee Granted Plaintiff's First Appeal Of Committee's Dismissal

Plaintiff appealed the Committee's decision and, at its July 19, 2004 meeting, the

Committee reconsidered its decision to dismiss Plaintiff. (Id., Ex. H.) Plaintiff again made a

statement to the Committee, presenting a number of reasons for each exam failure. (Id., Ex. H;

Ex. I.) He invoked many of the same "mitigating circumstances" that had been included in his

May 17, 2004 presentation. Specifically, Plaintiff again attributed academic failure to helping a

sick relative ("It took precious time away from studying, time that could have made the

difference between passing and failing … In hindsight, I should have decelerated or taken a

break from school rather than fail a course") and the stress of his marriage (e.g., "the actual

process of getting married and all the mental and physical energy that it consumed … the stress

of two diverse personalities attempting to share their space"). (Id., Ex. I.)

Members of the Committee were divided in their opinions regarding the appropriate

course of action, but by a narrow majority, voted to give Plaintiff another chance and allow him

to return to the medical school curriculum. (Id., Ex. H.) The reprieve granted by the Committee,

however, was conditional:  in order to continue his studies at AECOM Plaintiff "was not to fail

any exams or other academic expectations (no grade below 'pass'), he was not to provoke any

'attendance-related' concerns or difficulties especially with regard to exams – any of these or otherwise marginal performance was to provoke return to the Committee and potentially be grounds for dismissal at that point." (Id.) Despite the imperative that he pass all future exams, Plaintiff did not request any testing accommodation. Instead, Plaintiff assured the Committee that through proper scheduling and a balancing of priorities he would achieve academic excellence. (Id.)

Following the May 17th meeting, Dr. David sent letters to Plaintiff, reemphasizing the fact that any further exam failures would result in Plaintiff's dismissal. (Katz Aff., Ex. J.) In these letters, Dr. David directed Plaintiff to the By-Laws of the Committee, specifically those provisions relevant to AECOM's criteria for academic standards and student dismissal. (Id.)

D.    Committee Found Plaintiff's Failure Of Licensing Exam Was Grounds For Dismissal

Plaintiff failed yet another exam—albeit by a one-point margin—this time the United States Medical Licensing Exam ("USMLE") Step 1.[2]  (Katz Aff., Ex. K.)  Following such failure, the Committee met once again to discuss Plaintiff's status at AECOM. (Id., Ex. L.) At its December 19, 2005 meeting, the Committee reviewed Plaintiff's academic record and again considered the explanations he offered for his failures. (Id.)

In the statement delivered at this his third appearance before the Committee, Plaintiff reiterated the excuses of familial obligation ("September 2002 was a tumultuous time that was not the ideal atmosphere one would wish upon any beginner medical student. My grandmother suffered a debilitating stroke … and I transferred my residence from Einstein to Brooklyn to

---

[2] The USMLE is a three-step examination for medical licensure in the United States, which assesses a physician's ability to apply knowledge, concepts, and principles; the exam is sponsored by the Federation of State Medical Boards of the United States, Inc. and the National Board of Medical Examiners.  USMLE, General Information, *at* http://www.usmle.org/ (last visited Feb. 25, 2008).

offer weekends and some night to her care ... The toll that this extracted from my test preparation was enormous"), his engagement ("a new and exciting time was introduced into my life; I began the courtship of my future wife.  The drain on my study time and the emotional distraction took a terrible toll on my concentration, affected my studying and negatively impacted my test scores"), and subsequent marital stress, citing the fact that the 2005 MCFM exam was scheduled "a couple of weeks after" his wedding as an excuse for his failure ("The electrically charged emotions of two newlyweds adjusting to one another made it difficult to focus").  (Katz Aff., Ex. M at 2.)  In defense of his past failure of his Hematology exam, Plaintiff claimed:

> I fell ill on the night before the exam and did not feel well enough to sit for the exam ... I did not realize that I must send in an email to be excused from the exam ... I had forgotten that the procedure if different for a missed exam.  I berate myself and hold myself responsible for not becoming as familiar as I should have with the by-laws.

(Id.)  Finally, Plaintiff attempted to explain away his failure of the USMLE Step 1.  (Id.)  The excuses he offered for this failure included an absent study partner ("due to unforeseen circumstances [study partner] was unable to come to New York"), his decision not to enroll in a commercial preparation course ("I thought I would benefit from an intense one-on-one study partnership than join Kaplan"), and the scope and format of the exam itself ("the USMLE exam is unique in its own right.  The material that is being tested stretches across multiple disciplines, delves into each of them richly, and integrates them into one science.  Questions are not the classic one step associations I was accustomed to").  (Id.)  Despite these explanations, Plaintiff admitted that he underestimated the exam and that he "let[ his] foremost priority of studying be eclipsed by personal issues".  (Id.)  Again, Plaintiff's statement to the Committee was devoid of any request for accommodation for a disability.

8

After due consideration of Plaintiff's record and his myriad reasons for failure, with which the Committee was by that time quite familiar, the Committee reached a final determination to recommend that Plaintiff be dismissed from AECOM. (Katz Aff., Ex. L.) The December 19th meeting minutes detail the Committee's rationale: "failing so many exams over an extended period is contrary to policy rationale and warrants his dismissal." (Id.) As the Committee lacked a quorum of voting members at its December 19, 2005 meeting, it reconvened, reconsidered and issued its final determination to dismiss Plaintiff at its next meeting, on January 23, 2006. (Id.)

E.    Committee Denied Plaintiff's Second Appeal Of Committee's Dismissal

At the Committee's March 27, 2006 meeting Plaintiff appealed again, reading an elaborate written statement asking the Committee for yet another chance. (Katz Aff., Ex. O; Ex. P.) Plaintiff's statement to the Committee acknowledged that he had been "granted the privilege of continuing [his] education" after the repeated failures of his first year, and that he understood that such privilege was conditioned on his passing all future exams. (Id., Ex. P.) Furthermore, in his statement, Plaintiff admitted to being unprepared for the USMLE Step 1 exam:

> I do not pretend that a new impressive score on the USMLE will excuse the previous error of sitting for that exam unprepared. I made an estimation based on practice scores and time spent reviewing. That was a display of bad judgment, of not performing a thorough investigation that would leave no doubt as to my test readiness.

(Id.)

After delivering his statement and answering the questions from the Committee, Plaintiff announced unexpectedly that he had an unopened letter in his car from Dr. Shalom Feinberg, a psychiatrist with whom he had consulted a few weeks prior; Plaintiff then retrieved and submitted the letter to the Committee. (Katz Aff., Ex. O.) The letter, addressed to Plaintiff, bore

the salutation "To Whom It May Concern," and stated that Plaintiff "appears to meet DSM-IV

criteria for Attention Deficit/ Hyperactivity Disorder, NOS". (Id., Ex. Q.)  According to the

Committee meeting minutes, Plaintiff did not submit the letter in order to request any

accommodation:

> [Plaintiff] acknowledged that this letter that was held in reserve in his parked car
> did not constitute a request for accommodation or similar.  He acknowledged that
> he understood the by-laws and related policies do not encourage requests for
> retroactive leniency or dispensation "after the fact" of academic failures.  When
> pressed on the story  behind the surprise letter and information – none of which
> appeared in his written statement nor was it appended to the same – [Plaintiff]
> reported that it was not his own idea to obtain this consultation nor his own idea
> to obtain this letter.

(Id., Ex. O.)

Irrespective of his intentions behind obtaining and presenting such letter, the letter does

not constitute proper documentation as required by the By-Laws for an accommodation request.

Under the By-Laws, which specifically provide for ADA-required reasonable accommodation

for students with disabilities,[3] students seeking such accommodation must notify AECOM's

Office of Academic Support and Counseling ("OASC") of the disability and request

accommodation by completing applicable paperwork and providing certain background data.[4]

---

[3] "As required by the Rehabilitation Act of 1973 (PL 93-112) and the Americans with
Disabilities Act of 1990 (PL 101-336), the Albert Einstein College of Medicine will provide
reasonable accommodation(s) for students with appropriately diagnosed and documented
disabilities, provided that such accommodation does not change the fundamental nature of the
educational program or adversely affect the safety of patients, staff, or fellow trainees." (Katz
Aff., Ex. A at § VII.)

[4] "Documentation submitted in support of a request may be referred to experts in the appropriate
area of disability for impartial professional review. The student must personally initiate a written
request for accommodations and must provide appropriate consent to allow for
communication/correspondence with medical or other providers/evaluators of the student.

"To support a request for test accommodations, please submit the following:
1. Completed Accommodations Request Questionnaire (ARQ), and associated consent forms.

(Id., Ex. A. at § VII.)  For students seeking accommodation based on ADHD, additional documentation requirements apply.  (Id., Ex. A at § VII.B.)  Specifically, a qualified evaluator must submit a diagnostic report identifying DSM-IV criteria for ADHD and explaining specific recommendations for accommodations.  (Id.)  Neither the Feinberg letter nor Plaintiff's statements to the Committee amount to such a request for accommodation.

Dr. Feinberg's letter fails to establish a "specific diagnosis of ADHD", as required by AECOM's By-Laws.  (Id.)  Instead, it presents the indefinite opinion of Dr. Feinberg—based on a single consultation with Plaintiff—that Plaintiff "appears to meet DSM-IV criteria for Attention Deficit/ Hyperactivity Disorder, NOS".  (Katz Aff., Ex. Q.)  (Emphasis added.)  The letter identifies no basis for this opinion aside from "a review of [Plaintiff's] history and clinical status."  (Id.)

In addition to these deficiencies and the Dr. Feinberg's employment of the qualifying language "appears to meet", the psychiatric issue identified, Attention Deficit/Hyperactivity Disorder, NOS ("Not Otherwise Specified"), does not represent a specific disorder.  (Id.)  Instead, this title refers to a category of disorders "with prominent symptoms of inattention or hyperactivity-impulsivity that do not meet criteria for Attention-Deficit/Hyperactivity Disorder."  Amer. Psychiatric Ass'n, Diagnostic and Statistical Manual for Mental Disorders: DSM-IV, 85 (4th ed. 1994).  Furthermore, Dr. Feinberg identifies Anxiety Disorder NOS as one of "a number

---

2. A detailed, comprehensive written report describing your disability and its severity and justifying the need for the requested accommodations.

"The following characteristics are expected of all documentation submitted in support of a request for accommodations. Documentation must:
1. State a specific diagnosis of the disability.
2. A professionally recognized diagnosis for the particular category of disability is expected, e.g., the DSM-IV diagnostic categories for learning disabilities.
3. Be current."  (Katz Aff., Ex. A at § VII.B.)

of psychiatric issues", along with ADHD-NOS, "that are collectively negatively impacting on [Plaintiff's] ability to function in his professional and personal life." (Katz Aff., Ex. Q.)

The Committee voted to uphold its prior determination that Plaintiff be withdrawn from the medical program. (Id., Ex. O.)

F.    Dean Spiegel Denied Plaintiff's Written Appeal Of Committee's Dismissal

In a letter dated June 30, 2006, Plaintiff commenced a second level of appeal, appealing his dismissal to the Marilyn and Stanley M. Katz Dean, Dr. Allen Spiegel. (Id., Ex. S.) In that letter, Plaintiff once again attempted to explain away his pattern of failure:

> During the first year I was confronted with a number of personal issues and I placed their priority above my studies ... My Grandmother suffered an incapacitating stroke and began to suffer from depression. My continued personal involvement was instrumental to her recovery. Also a challenge was that my wife and I were experiencing serious marital conflict. We began couples therapy and maintain that practice to the present day. Lastly, coinciding with the time period of my Step 1 exam my wife and I had a baby boy.

(Id. at 7.) He asked the Dean to waive the criteria for dismissal based on these "extenuating circumstances" and "mitigating factors". (Id. at 8.) Plaintiff invoked Dr. Feinberg's identification of ADHD-NOS—improperly characterizing it as a diagnosis of ADHD—not as part of a request of accommodation, but as "a mitigating factor when considering test scores." (Id. at 7.)

Dean Spiegel, after conducting a review of the submissions by Plaintiff, Plaintiff's academic record, and the records of relevant Committee proceedings, rejected Plaintiff's letter of appeal. (Katz Aff., Ex. T.) The Dean's denial of Plaintiff's appeal, sent via a letter dated July 12, 2006, advised Plaintiff that his March 27th notification to the Committee of his alleged disability did not entitle him to retroactive accommodation:

> [t]he College was notified of your contact with Dr. Feinberg and his diagnostic impressions during Committee proceedings conducted in late March of 2006.

> These and other records indicate that you had raised the matter of these
> psychiatric conditions after you had failed sufficient examinations to have
> provoked the Committee's recommendation that you be dismissed. Our policy
> obligations do not envision provision of retroactive examination accommodations
> or similar <u>post hoc</u> entitlements.

(<u>Id.</u>) Finding the Committee's consideration of Plaintiff's performance record was thorough and

proper, Dean Spiegel accepted the Committee's recommendation for dismissal on the basis of

Plaintiff's failure to meet AECOM's promulgated academic standards:

> In summary, I find that the Committee on Student Promotions and Professional
> Standards has thoroughly and properly considered your performance record and
> has, in addition, met directly with you and with members of your family on more
> than one occasion over the years. Despite your efforts, your academic work has
> ultimately failed to meet the College's promulgated standards. On that basis, I
> must deny your appeal that I reverse the Committee's dismissal
> recommendation.

(<u>Id.</u>)

G.    <u>Plaintiff Has Failed To Identify Any Issues Of Fact During Discovery</u>

Plaintiff commenced this action on March 16, 2007. (Riesel Aff. at ¶ 2.) Following such

commencement, Defendants answered the Complaint (<u>Id.</u> at ¶ 3), served Plaintiff with discovery

requests (<u>Id.</u> at ¶ 4), and made requisite initial disclosures pursuant to Rule 26(a). (<u>Id.</u> at ¶ 6.)

The Scheduling Order governing discovery called for completion of fact discovery and

identification of experts by January 31, 2008. (<u>Id.</u> at ¶ 5.) As such, the time for discovery has

since expired.

Defendants' initial disclosures include AECOM's By-Laws, Plaintiff's academic record

and student file, minutes from the Committee meetings regarding Plaintiff's dismissal,

documents submitted by Plaintiff to the Committee, and correspondence relating to Plaintiff's

academic performance and eventual dismissal. (Katz Aff., Exs. A–T.) Such documents provide

a complete depiction of the proceedings before the Committee regarding Plaintiff's dismissal

from AECOM. A review of such documents indicates that AECOM exercised proper discretion when examining Plaintiff's record and ultimately deciding that his poor academic record warranted dismissal. This record demonstrates the impossibility of a conclusion that AECOM, the Committee, or either of the named defendants knew that Plaintiff had a disability prior to his failing ten exams or prior to the Committee's January 23, 2006 determination that such failures required his withdrawal from the medical school.

ARGUMENT

POINT I

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). Here, it is uncontested that Plaintiff was dismissed from AECOM after and as a result of his failure of ten exams. It is likewise undisputed that Plaintiff did not notify AECOM of his ADHD-NOS diagnosis until after his tenth exam failure, and that, prior to such failure, he had not requested accommodation for ADHD-NOS from AECOM. These uncontested facts entitle Defendants to judgment as a matter of law.

Following Plaintiff's March 16, 2007 commencement of this action, Defendants answered the Complaint on April 5, 2007 and served discovery requests on May 11, 2007. Plaintiff has made no response to those discovery requests, has served no discovery requests of his own, and has made no initial disclosures. (Riesel Aff. at ¶ 7.) Plaintiff's failure to utilize discovery to identify any factual issues confirms the absence of such issues.

14

Defendants' initial disclosures, which include documentation of Plaintiff's academic failures, the Committee's consideration of such failures, Plaintiff's submissions to the Committee, the Committee's determinations that Plaintiff be dismissed from AECOM, Plaintiff's appeals of such determinations, and the Dean's denial of Plaintiff's appeal, represent the complete record of the action now challenged.  (Id., Ex. F; Katz Aff, Exs. A–T.)  This record demonstrates that all relevant facts are now before the Court and that issues of law do not implicate a further development of facts.  Plaintiff neither has alleged that the proceedings documented therein were biased nor has disputed the contents of the record.  During the discovery period, which expired on January 31, 2008, Plaintiff failed to point to any triable issues of fact.

Given the absence of any question of fact, summary judgment is appropriate because Plaintiff's claims are legally deficient.  His due process claim requires dismissal because AECOM is not a state actor, and his ADA Title III claim should be dismissed because the pleadings are devoid of any allegation that AECOM had knowledge of Plaintiff's alleged disability prior to his ten exam failures and the undisputable facts show that AECOM had no such knowledge.  The conclusory assertions of the Complaint are insufficient to raise a triable issue of fact.  Therefore, summary judgment is appropriate.

## POINT II

### PLAINTIFF FAILS TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT ON WHICH RELIEF CAN BE GRANTED

Plaintiff's second claim alleges that Defendants have deprived Plaintiff of rights secured by Title III of the ADA.[5]  However, the courts have held uniformly that an institutional

---

[5] Title III of the ADA proscribes discrimination against disabled persons by public accommodations: "No individual shall be discriminated against on the basis of disability in the

defendant cannot be held liable under Title III for failing to accommodate a disability where such entity had no knowledge of the alleged disability.[6]  K.H. v. Vincent Smith Sch., 2006 WL 845385, *8 (E.D.N.Y. Mar. 29, 2006) (notice of disability is essential element of Title III claim); Goodwin v. Keuka Coll., 929 F.Supp. 90, 95 (W.D.N.Y. 1995) (granting summary judgment where plaintiff failed to demonstrate school had notice of disability); see also Goldstein v. Harvard Univ., 77 Fed. Appx. 534 (1st Cir. 2003) (ADA requires accommodation request); Carten v. Kent State Univ., 78 Fed. Appx. 499 (6th Cir. 2003) (same); Ferrell v. Howard Univ., 1999 WL 15181759, *5 (D.D.C. Dec. 2, 1999) (where medical student was dismissed after failing USMLE, post-dismissal notification to school of ADHD diagnosis was insufficient to establish ADA claim); Axelrod v. Phillips Acad., Andover, 46 F.Supp.2d 72 (D.Mass. 1999) (burden on plaintiffs to show that they requested a reasonable accommodation and the school denied it).  Here, the pleadings themselves contain no allegation that AECOM had notice of Plaintiff's alleged disability until well after his numerous failures, and after the Committee had recommended to dismiss him based on those failures.  Further, it is incontestable that AECOM does accommodate persons with disabilities, including ADHD (Katz Aff. at ¶ 2), but that Plaintiff never requested accommodation for his alleged disability from AECOM and never advised administration officials of such disability until after he had failed ten exams and after the Committee determined that his repeated failures warranted dismissal, when he sought to appeal such dismissal.  Those facts are fatal to Plaintiff's ADA claim.

---

full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." ADA, 42 U.S.C. § 12182(a).

[6] To prevail on a Title III claim of discrimination against a school, a plaintiff must show: (1) that he or she is a "qualified individual" with a disability; (2) that defendant school is subject to the ADA; and (3) that he or she was denied the opportunity to participate in or benefit from school services, programs or activities by reason of his or her disability.  Powell v. Nat'l Bd. of Med. Exam's, 364 F.3d 79 (2d Cir. 2004).

A.    Plaintiff Cannot Demonstrate That AECOM Denied
      <u>An Accommodation Request Where No Such Request Was Made</u>

Even assuming, <u>arguendo</u>, that Plaintiff has an ADA-recognized disability and is otherwise qualified, Plaintiff cannot establish a prima facie case under Title III because there are no facts supporting a finding that Plaintiff was denied accommodations "by reason of" his alleged disability.  Indeed, Plaintiff was dismissed from AECOM by reason of his failure of ten medical school exams.  As Plaintiff never requested accommodation for his disability nor notified AECOM of such disability prior to his exam failures, AECOM had no occasion to deny Plaintiff the opportunity to participate in or benefit from school services, programs or activities by reason of his disability.

In order to demonstrate a denial of accommodations "by reason of" a disability, a plaintiff must show that he requested a specific accommodation for his disability and that such request was denied.  <u>Goldstein v. Harvard Univ.</u>, 77 Fed. Appx. at 537 (ADA claim must demonstrate reasonable request for accommodation); <u>Carten v. Kent State Univ.</u>, 78 Fed. Appx. at 501(same); <u>Axelrod v. Phillips Acad., Andover</u>, 46 F.Supp.2d at 83-84 (same).

As the uncontested facts show, at no time before his failure of ten exams did Plaintiff notify AECOM of his alleged disability or request accommodation based on such disability. Furthermore, at no time before the Committee's January 23, 2006 determination that he be withdrawn from the medical school did Plaintiff so notify AECOM or make such an accommodation request.  Indeed, in his multiple and lengthy submissions at Committee meetings leading up to his dismissal, Plaintiff offered various excuses for his poor academic performance (<u>e.g.</u>, obligations to sick relative, lengthy commute, martial strife, underestimation of exam difficulty), but not once invoked a disability or requested accommodation for future courses of study or future examinations.  Plaintiff only notified AECOM of his alleged disability after his

17

tenth exam failure and after the Committee's dismissal recommendation, during his appeal of such recommendation.

Moreover, Plaintiff himself admitted that his notification to the Committee of his ADHD diagnosis was not a request for accommodation: "[Plaintiff] acknowledged that [the Feinberg letter] did not constitute a request for accommodation or similar." (Katz Aff., Ex. O.) Rather, Plaintiff informed the Committee of his diagnosis in an effort to secure reconsideration of his academic failures under a more lenient standard asserting that pharmacological treatment subsequent to Plaintiff's diagnosis "intrinsically represents a mitigating factor when considering test scores." (Id., Ex. S.)

B.    Introduction of ADHD-NOS "Diagnosis" During
      Appeal Does Not Constitute A Request For Accommodation

Despite the facts on record establishing that Plaintiff made no request for accommodation, Plaintiff now apparently attempts to characterize the presentation of his ADHD-NOS "diagnosis" to the Committee as such a request. The Complaint states: "Plaintiff appeared before the appeal Committee and presented evidence of the above diagnosis by a member of AECOM faculty, and revealed the prescribed medication which he was taking, urged his condition as an explanation of his previous shortcoming and urged that some accommodation be made under these circumstances." (Complaint at ¶ 30.) Such characterization is untenable as it is wholly inconsistent with the provisions of the ADA.

The decision in Ferrell v. Howard Univ. is directly on point. In that case, the district court for the District of Columbia granted defendant medical school's motion for summary judgment where a former medical student who had been dismissed after failing the USMLE three times and who had advised the school of her ADHD diagnosis after such failures sought relief

under Title III of the ADA.  Rejecting plaintiff's argument that her former medical school had a

duty to accommodate her ADHD after her third failure of the USMLE, the court reasoned that:

> The relevant time period for determination of what duty the [ADA] would have imposed upon defendants is from [time 1990, when plaintiff began her studies at Howard University, through her third attempt at the USMLE, prior to August, 1995.  It is relevant that at no time during this period did plaintiff ever notify defendants of her disability or request any intervention by defendants in securing any accommodation for the USMLE.

Ferrell v. Howard Univ., 1999 WL 1581759 at *4.  By this reasoning, the time period during

which AECOM owed Plaintiff a duty to provide accommodation of a disability upon proper

request was August 2002 (date of Plaintiff's matriculation) through September 8, 2005 (date

Plaintiff failed the USMLE Step 1).  Plaintiff made no request for accommodation and gave no

notice to AECOM of any disability during this period.  Indeed, the Complaint states that Plaintiff

was not "diagnosed" with ADHD-NOS until February 22, 2006.  Therefore, AECOM owed no

duty to Plaintiff for any arguable requests for accommodation made after September 8, 2005.

The Ferrell court held that the ADA does not require the granting of post hoc exceptions

by medical schools to their dismissal policies, as such exceptions could lead to the "perverse

consequences" that students rightfully dismissed would secure after-the-fact disability diagnoses

that encompass the conduct that led to the challenged action.  Id. at *5.  The court further

clarified this holding, stating that reconsideration by a medical school of its decision to dismiss a

student based on an after-the-fact notice of a disability constitutes a post hoc exception to the

school's dismissal policy; it cannot be characterized properly as an accommodation.  Id. at *6.

The regulations implementing Title III of the ADA support this distinction.  Delineating

specific requirements for public accommodations, these regulations identify appropriate

accommodation for examinations and courses:  "Any private entity that offers examinations or

courses related to licensing, certification, or credentialing for secondary or postsecondary

education, professional, or trade purposes shall offer such examinations or courses <u>in a place and manner</u> accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 28 C.F.R. § 36.309(a) (emphasis added).  Those accommodations guaranteed by the ADA regulations involve the appropriate selection and administration of examinations to ensure an accurate reflection of an individual's aptitude of achievement level, rather than reflecting the individual's impaired skills.  <u>Id</u>. at § 36.309(b)(2).  Typical exam accommodations include "changes in the length of time permitted for completion ... and adaptation of the manner in which the examination is given."  <u>Id</u>.  Such modifications can only be implemented before an exam is administered; retroactive accommodation is not possible.

Plaintiff's entire ADA claim is based on this very sort of request for a <u>post hoc</u> exception described by the <u>Ferrell</u> court.  Plaintiff makes no claim that he was denied the kind of accommodations outlined in the ADA regulations.  Instead, he apparently now challenges Defendants' refusal to reconsider the academic policy under which he was properly dismissed. Dean Spiegel's letter denying Plaintiff's appeal of his dismissal makes clear that no such <u>post hoc</u> exception is available:  "Our policy obligations do not envision provision of retroactive examination accommodations or similar <u>post hoc</u> entitlements."  (Katz Aff., Ex. T.)  As the ADA does not require the provision of such exception, Plaintiff's claim fails.

C.    Monetary Relief Is Not Available Under
      <u>Title III Of The Americans With Disabilities Act</u>

Additionally, as Title III of the ADA does not provide for the recovery of damages, the monetary award sought is inappropriate.  The available remedies under Title III are those which are available under the public accommodation provisions of the Civil Rights Act, which provisions do not make damages available to private plaintiffs.  <u>See</u> <u>Newman v. Piggy Park Enter., Inc.</u>, 390 U.S. 400, 401-02 (1968); <u>Melendez v. Monroe Coll.</u>, 2006 WL 2882568, *7

(E.D.N.Y. 2006). Therefore, even if Plaintiff could demonstrate an ADA violation—which he clearly cannot—he is not entitled to damages sought in the Complaint. As no relief can be granted by this court, summary judgment is proper against Plaintiff on his ADA claims.

POINT III

PLAINTIFF FAILS TO STATE A DUE PROCESS<br>CLAIM ON WHICH RELIEF CAN BE GRANTED

Because Plaintiff cannot show that Defendants are either state actors or were acting under the color of state law in their decision to terminate him, he cannot state a claim on which relief can be granted for a due process violation. Initially, it is well-settled that a claim alleging a violation of due process guaranteed by the Fourteenth Amendment of the Constitution must be stated as an action under 42 U.S.C. § 1983. See Pauk v. Bd. of Trs. of the City Univ. of New York, 654 F.2d 856, 865 (2d Cir. 1981). As Plaintiff has failed to plead his due process claim as an action under Section 1983, it should be dismissed on this basis alone.

A.    AECOM Is Not A State Actor Under Section 1983

Even if Plaintiff had properly asserted his claim alleging a violation of federal due process as a claim for relief under Section 1983, Plaintiff has nonetheless failed to state a claim on which relief can be granted. It is well-settled that "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under the color of state law." Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). A plaintiff must specifically plead state action. Id. To plead state action, a plaintiff must allege facts showing either that the state has ceded governmental functions to the private actor that the state would otherwise be obligated to perform, Kia P. v. McIntyre, 235 F.3d 749, 757 (2d Cir. 2000), or that the state has effectively assumed control of the private institution's policies and operations. Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 400 (1995). Plaintiff has not

21

alleged—and cannot allege—facts establishing either cession of obligatory government functions to AECOM or state control of AECOM's policies and procedures. See, e.g., Kraft v. Yeshiva Univ., 2001 WL 1191003, *3 (S.D.N.Y. Oct. 5, 2001) (due process claim dismissed where plaintiff failed to allege any facts sufficient to show Yeshiva is a state actor). As Plaintiff cannot demonstrate Defendants are state actors for purposes of Section 1983, his due process claim must be dismissed.

B.    The Committee Complied With All Applicable AECOM By-Laws

Moreover, Plaintiff's claims that Defendants failed to comply with AECOM By-Laws are without merit. Noting the "historic and unique responsibility of a medical school" and the "implicit obligation to society to award this degree only when it is appropriate to do so", the By-Laws charge the Committee with the task of maintaining high academic standards. Specifically, the By-Laws provide for dismissal of a student who has failed seven exams, and they require the dismissal of a student who has failed eight exams.

Given the recognition that an academic institution is "better suited to make decisions regarding its own internal affairs", New York courts generally will afford deference to the actions of such institutions so long as the institution's rules are "substantially observed." Ebert v. Yeshiva Univ., 28 A.D.3d 315, 315, 813 N.Y.S.2d 408, 409 (1st Dept. 2006). The record of relevant proceedings before the Committee demonstrates that all proper procedures were followed. AECOM's requirements of academic performance are unambiguous: "Seven exams is grounds for dismissal. Eight failed exams requires the student be dismissed. Failing any exam or course twice warrants dismissal." (Katz Aff., Ex. A. at § IV.D.14.) (Emphasis added.)

Thus, the Committee's review of Plaintiff's academic difficulties and its ultimate dismissal of Plaintiff from the medical school after his ten exam failures was a rational exercise

of its discretion and in keeping with its obligation to society and relevant By-Law provisions. The minutes from the numerous Committee meetings at which Plaintiff's academic record was reviewed make clear that the Committee, rather than discriminating against Plaintiff, gave him multiple opportunities to move beyond his pattern of failures. Indeed, the statements made by Plaintiff to the Committee further confirm that his dismissal was precipitated by his own conduct, and that he had been fairly treated. In his December 2005 statement before the Committee, Plaintiff admitted to "letting [his] foremost priority of studying be eclipsed by personal issues." (Katz Aff., Ex. M at 2.)

In sum, Plaintiff's claims are on their face devoid of merit. The plain fact is that AECOM, a private institution, was well within its discretion when it decided to terminate Plaintiff.

## POINT IV

### PLAINTIFF'S CLAIMS ARE BARRED BY
### THE APPLICABLE STATUTE OF LIMITATIONS

To the extent that Plaintiff's "due process" claim can be construed to be a claim arising under New York law to the effect that AECOM did not follow its own rules, it would invoke the New York State four-month statute of limitations and thus be time-barred.

A.    Challenges To Dismissals From Academic Institution
       Are Subject To The Four-Month Statute Of Limitations

It is well established that challenges to an academic institution's decisions to terminate a student are properly brought in a CPLR Article 78 proceeding. Diehl v. St. John Fisher Coll. ("Diehl"), 278 A.D.2d 816, 718 N.Y.S.2d 516 (4th Dept. 2000); see also Maas v. Cornell Univ.

("Maas"), 94 N.Y.2d 87, 699 N.Y.S.2d 716, 719 (1999). Such actions are governed by the four-month statute of limitations set forth at CPLR § 217(1).[7] Diehl, 718 N.Y.S.2d at 517.

It is clear that Plaintiff was dismissed as an AECOM student by letter dated July 12, 2006, and that he commenced this action by summons with notice over eight months later on March 16, 2007. (Riesel Aff. at ¶ 2.) Thus, the statute of limitations began to run on July 12, 2006, when Dean Spiegel rejected Plaintiff's appeal, and expired four months later on November 12, 2006. As such, this action has been time-barred and must be dismissed.

B.    Plaintiff's "Causes of Action" Are Not
      Saved By the Appellations He Assigns Them

The fact that Plaintiff styles his "causes of action" as due process and civil rights violations does not save them. It is hornbook law that the statute of limitations is controlled by the essential nature of the action—which is here unarguably Plaintiff's challenge to his dismissal from AECOM—not the appellation that the plaintiff assigns to it. Western Electric Co. v. Brenner, 41 N.Y.2d 291, 392 N.Y.S.2d 409, 410 (1977); Powers Mercantile Corp. v. Feinberg, 109 A.D.2d 117, 490 N.Y.S.2d 190, 192 (1st Dept. 1985), aff'd, 67 N.Y.2d 981, 502 N.Y.S.2d 1001 (1986).

The essential nature of the claims is Plaintiff's assertion that AECOM's decision to dismiss him from the medical school was inconsistent with university procedures. Indeed, Plaintiff's first "cause of action" complains that his termination was wrongful because Defendants "fail[ed] to properly consider the evidence presented concerning Plaintiff's

---

[7] CPLR §217(1) states, in relevant part: "Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or fact."

condition". (Complaint at ¶ 41.)  Plaintiff's second "cause of action" asserts that such dismissal "deny[ed] Plaintiff meaningful access to the medical school program of AECOM." (Id. at ¶ 52.)

A review of the allegations contained in the Complaint make clear that Plaintiff seeks nothing more than judicial review of the academic determination by AECOM administrators that his repeated exam failures warranted his withdrawal from the medical school.  As the courts have repeatedly made clear, even when couched in terms of some other plenary cause of action, claims directed at academic and administrative decisions may only be reviewed in a CPLR Article 78 proceeding and are subject to the four-month statute of limitations applicable in such proceedings.  See Maas, 699 N.Y.S.2d at 719; Diehl, 718 N.Y.S.2d at 517.  Thus, because this action seeks judicial review of the academic determination of AECOM, the four-month statute of limitations applies, and Plaintiff's claims are time-barred.

CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment should be granted and Plaintiff's Complaint dismissed in its entirety.

Dated:  New York, New York
       April 1, 2008

                      SIVE, PAGET & RIESEL, P.C.
                      Attorneys for Defendants

              By: _____
                    Daniel Riesel (DR-9777)
                    460 Park Avenue
                    New York, New York 10022
                    (212) 421-2150